**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Brittany S. Scott (State Bar No. 327132)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
        bscott@bursor.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA BROWN and HEATHER BLUM, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MORTON SALT, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiffs Victoria Brown and Heather Blum ("Plaintiffs") bring this action on behalf of themselves, and all others similarly situated against Morton Salt, Inc. ("Defendant"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

**NATURE OF THE ACTION**

1. This is a putative class action lawsuit on behalf of purchasers of Morton Salt, Inc.'s Himalayan Pink Salt Products, including the Morton Coarse Himalayan Pink Salt and Morton Fine Pink Salt (collectively, the "Salt Products"). Defendant Morton Salt markets and sells the Salt Products as "Himalayan" and "harvested from ancient sea salt deposits deep within the Himalayas":




2. However, the Salt Products are not "harvested from … deep within in the Himalayas." In fact, they are sourced from salt mines hundreds of miles away in Pakistan.

3. As a result of Defendant's misrepresentations, Defendant is able to charge consumers more money for its Salt Products because Himalayan pink salt is supposedly mined in the pristine Himalayan Mountains, which are rich in iron. Accordingly, consumers are willing to pay more for Himalayan salt.

4. By virtue of the misrepresentations on the Product's packaging, Defendant engaged in widespread false and deceptive advertising on its Salt Products by claiming that the Salt Products were "harvested from … deep within in the Himalayas" (the "Himalayan Claims"). The Claim prominently appears on each Product's package.

5. Plaintiffs and Class Members purchased Defendant's Salt Products and they relief to their detriment on Defendant's representation that the Products were "harvested from … deep within in the Himalayas." Plaintiffs and Class Members would not have paid to purchase Defendant's Salt Products – or they would not have paid as much as they did to purchase it – had they known that the Salt Products were not, in fact, "Himalayan." Plaintiffs and Class Members thus suffered monetary damages from Defendant's deceptive and false representations.

## PARTIES

6. Plaintiff Heather Blum is a citizen of California, residing in Merced, California. In or about January/February 2021, Plaintiff Blum purchased Morton All-Natural Himalayan Pink Salt for her personal use from Save Mart in Merced, California. Prior to her purchase of the Product, Plaintiff Blum reviewed the Product's labeling and packaging and saw that her Product was "Himalayan" and "harvested from ancient sea salt deposits deep within the Himalayas." Plaintiff Blum relied on that labeling and packaging to choose this Product over comparable products. Plaintiff Blum saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that the Product was mined in the Himalayas. Plaintiff Blum relied on these representations and warranties in deciding to purchase the Product. Accordingly, those representations and warranties were part of the basis of the bargain, in that she would not have purchased the Product on the same terms had she known those representations were not true. However, Plaintiff Blum remains interested in purchasing Salt Products from the Himalayas and would consider Morton Salt in the future if Defendant ensured the Salt Products

actually were mined in the Himalayas. In making her purchase, Plaintiff Blum paid a substantial price premium due to the false and misleading claim that the Product was from the Himalayas. However, Plaintiff Blum did not receive the benefit of her bargain because the Salt Product she purchased was not, in fact, mined in the Himalayas. Plaintiff Blum further understood that the purchase came with Defendant's representation and warranties that the Salt Product originated from the Himalayas.

7. Plaintiff Victoria Brown is a citizen of California, residing in Bay Point, California. In or about December 2020, Plaintiff Brown purchased Morton All-Natural Himalayan Pink Salt for her personal use from Food Co. in Pittsburgh, California. Prior to her purchase of the Salt Product, Plaintiff Brown reviewed the Product's labeling and packaging and saw that her Salt Product was "Himalayan" and "harvested from ancient sea salt deposits deep within the Himalayas." Plaintiff Brown relied on that labeling and packaging to choose this Product over comparable products. Plaintiff Brown saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that the Salt Product was mined in the Himalayas. Plaintiff Brown relied on these representations and warranties in deciding to purchase the Salt Product. Accordingly, those representations and warranties were part of the basis of the bargain, in that she would not have purchased the Product on the same terms had she known those representations were not true. However, Plaintiff Brown remains interested in purchasing Salt Products from the Himalayas and would consider Morton Salt in the future if Defendant ensured the Salt Products actually were mined in the Himalayas. In making her purchase, Plaintiff Brown paid a substantial price premium due to the false and misleading claim that the Product was from the Himalayas. However, Plaintiff Brown did not receive the benefit of her bargain because the Salt Product she purchased was not, in fact, mined in the Himalayas. Plaintiff Brown further understood that the purchase came with Defendant's representation and warranties that the Salt Product originated from the Himalayas.

8. Defendant Morton Salt, Inc. ("Morton Salt') is a corporation incorporated in the state of Delaware, with its principal place of business in Chicago, Illinois. Morton Salt, Inc. is a subsidiary of holding company Stone Canyon Industries Holdings, Inc. Morton Salt is North

America's leading producer and marketer of salt. Morton Salt manufactures, sells, and/or distributes Morton Salt-brand products, and is responsible for the advertising, marketing, trade dress, and packaging of Morton Salt products. Morton Salt manufactured, marketed, and sold the Salt Products during the class period. The planning and execution of the advertising, marketing, labeling, packaging, testing, and corporate operations concerning the Salt Products and the Himalayan Claims was primarily carried out at Morton Salt's headquarters and facilities in Illinois. The policies, practices, acts and omissions giving rise to this action were developed in, and emanated from, Morton Salt's headquarters in Chicago, Illinois.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiffs, as well as most members of the proposed class, are citizens of states different from Defendant.

10. This Court has personal jurisdiction over Defendant Morton Salt because Defendant is registered with the California Secretary of State to conduct business within California and conducts substantial business within California, such that Morton Salt has significant, continuous and pervasive contacts with the State of California.

11. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Morton Salt transacts significant business within this District. Venue is also proper under 28 U.S.C. § 1391(c) because Morton Salt is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

12. Himalayan pink salt is a popular product with multiple uses, including cooking and cosmetics. However, "its origins are rarely highlighted or even mentioned on products—perhaps because Pakistan, where most of this salt comes from, isn't a place one associates with pink salt.

1  Instead, the salt is often marketed as coming from some amorphous Himalayan mountain, perhaps
2  an icy glacier."[1]

3        13.     Most Himalayan pink salt is mined in the Khewra Salt mine in Northern Pakistan,
4  "hundreds of miles from the iconic snowy peaks of the Himalayas."[2]

5        14.     In fact, to combat the misrepresentation that this Pakistani product is Himalayan, the
6  Pakistani cabinet is set to register Khewra salt with international trade bodies, ensuring that the
7  product's true origin is not obfuscated by misleading advertising.[3]

8        15.     Morton Salt sells, manufactures, and markets the Salt Products, which are sold as
9  "Himalayan pink salt."  On the front of the Salt Products' packaging, the products are touted as
10 "Himalayan" and "harvested from ancient sea salt deposits deep within the Himalayas":




---

[1] Diaa Hadid & Abdul Sattar, *Pakistan Wants You To Know: Most Pink Himalayan Salt Doesn't Come From India*, National Public Radio (Oct. 3, 2019), https://www.npr.org/sections/thesalt/2019/10/03/763960436/pakistan-wants-you-to-know-most-pink-himalayan-salt-doesnt-come-from-india
[2] *Id.*
[3] Kalbe Ali, *Khewra Salt Set To Be Registered With International Trade Bodies*, Dawn (Apr. 29, 2021), https://www.dawn.com/news/1620895

16. However, all of Morton Salt's "Himalayan pink salt" products are in fact mined in Pakistan, not in the Himalayas.

17. Defendant's advertising and marketing of the Salt Products is false and misleading and omits material information. Morton Salt prominently advertises on the front label that the Salt Products are "Himalayan" and the Products' descriptions also assert that the Salt Products were "harvested from ancient sea salt deposits deep within the Himalayas." Consumers reasonably expect that the Salt Products will, in fact, be from the Himalayas. Nowhere on the Salt Products' label does Defendant inform consumers that the Salt Products were not mined from the Himalayas. Defendant's misrepresentations and/or omissions violate consumers' reasonable expectations and as alleged herein, California's consumer protection statutes.

18. Defendant knew or should have known that the Salt Products' express Himalayan Claims were false, deceptive, and misleading, and that Plaintiff, the Class, and California Subclass Members would not be able to tell that the Salt Products were not mined from the Himalayas absent Defendant's express disclosure.

19. On information and belief, Defendant, knew that their Salt Products were not from the Himalayas, but chose to include the Himalayan Claims because it did not believe its customers would know the difference.

20. Had Defendant not made the false, misleading, and deceptive representations and/or omissions alleged herein, Plaintiffs and Class Members would not have purchased the Salt Products or would not have paid as much as they did for such products. Thus, Plaintiffs and Class Members suffered an injury in fact and lost money or property as result of Defendant's wrongful conduct.

## CLASS ALLEGATIONS

21. Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

22. Plaintiffs seek to represent a class defined as all people who purchased any Morton Salt product that falsely advertised that the product was mined from the Himalayan Mountains during the applicable statute of limitations (the "Class"). Specifically excluded from the Class are

1  Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

23. Plaintiffs also seek to represent a subclass consisting of Class Members who reside in California (the "California Subclass").

24. Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Class and California Subclass may be expanded or narrowed by amendment or amended complaint.

25. **Numerosity.** The Class and California Subclass Members are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiffs reasonably estimate that there are hundreds of thousands of Members in the Class and in the California Subclass. Although the precise number of Class and California Subclass Members is unknown to Plaintiffs, it is known by Defendant and may be determined through discovery.

26. **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all Members of the Class and California Subclass and predominate over any questions affecting only individual Class or California Subclass members. These common legal and factual questions include, but are not limited to, the following:

(a) Whether Defendant made false and/or misleading statements to the consuming public concerning the origin of the Salt Products;

(b) Whether Defendant omitted material information to the consuming public concerning the origin of the Salt Products;

(c) Whether Defendant's labeling and packaging for the Salt Products is misleading and/or deceptive;

(d) Whether Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising and sale of the Salt Products;

(e) Whether Defendant's representations concerning the Salt Products were likely to deceive a reasonable consumer;

(f) Whether Defendant's omissions concerning the Salt Products were likely to deceive a reasonable consumer;

(g) Whether Defendant represented to consumers that the Products have characteristics, benefits, or qualities that they do not have;

(h) Whether Defendant advertised the Salt Products with the intent to sell them not as advertised;

(i) Whether Defendant falsely advertised the Salt Products;

(j) Whether Defendant made and breached express and/or implied warranties to Plaintiffs and Class and California Subclass Members about the Salt Products;

(k) Whether Defendant's representations, omissions, and/or breaches caused injury to Plaintiffs and Class and California Subclass Members; and

(l) Whether Plaintiffs and Class and California Subclass Members are entitled to damages.

27. **Typicality.** Plaintiffs' claims are typical of the claims of the other Members of the Class and Subclass in that, among other things, all Class and California Subclass Members were deceived (or reasonably likely to be deceived) in the same way by Defendant's false and misleading advertising claims about the origin of the Salt Products. All Class and California Subclass Members were comparably injured by Defendant's wrongful conduct as set forth herein. Further, there are no defenses available to Defendant that are unique to Plaintiffs.

28. **Adequacy of Representation.** Plaintiffs will fairly and adequately protect the interests of the Members of the Class and California Subclass. Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Class and California Subclass. Furthermore, Plaintiffs have no interests that are antagonistic to those of the Class or California Subclass.

29. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by

individual Class and California Subclass Members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for Class or California Subclass Members to obtain effective redress on an individual basis for the wrongs committed against them.  Even if Class or California Subclass Members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  It would also increase the delay and expense to all parties and the court system from the issues raised by this action.  The class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

30. In the alternative, the Class and California Subclass may also be certified because:

(a) the prosecution of separate actions by individual Class and California Subclass Members would create a risk of inconsistent or varying adjudications with respect to individual Class or California Subclass Members that would establish incompatible standards of conduct for Defendant;

(b) the prosecution of separate actions by individual Class and California Subclass Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class and California Subclass Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c) Defendant has acted or refused to act on grounds generally applicable to the Class and to the California Subclass as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the Members of the Class and to the Members of the California Subclass as a whole.

**COUNT I**
**Violation Of Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750, *et seq.***
**(On Behalf Of The California Subclass)**

31. Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

32. Plaintiffs bring this claim individually and on behalf of the Members of the proposed California Subclass against Defendant.

33. Defendant has violated California's Consumers Legal Remedies Act (the "CLRA") by engaging in the following unfair and deceptive business practices, as alleged above and herein:

(a) Defendant violated Cal. Civ. Code § 1770(a)(5) by using deceptive representations or designations of geographic origin in connection with the Products.

(b) Defendant violated Cal. Civ. Code § 1770(a)(5) by representing that the Products have characteristics that they do not have.

(c) Defendant violated Cal. Civ. Code § 1770(a)(9) by advertising the Products with the intent not to sell them as advertised.

34. The CLRA was enacted to protect consumers against such practices. The CLRA applies to Defendant's conduct because the statute covers all sales of goods to consumers.

35. Plaintiffs and other Members of the California Subclass are "consumers" within the meaning of Cal. Civ. Code § 1761(d). By purchasing Defendant's Products, Plaintiffs and other Members of the California Subclass engaged in "transactions" within the meaning of Cal. Civ. Code §§ 1761(e) and 1770.

36. Defendant is a "person" within the meaning of Cal. Civ. Code § 1761(c).

37. Defendant's Salt Products are "goods" within the meaning of Cal. Civ. Code § 1761(a).

38. Defendant's unfair and deceptive business practices, as alleged above and herein were intended to and did result in the sale of the Products.

39. As a direct and proximate result of Defendant's unfair and deceptive business practices, as alleged above and herein, Plaintiffs and other Members of the California Subclass suffered injury and damages in an amount to be determined at trial.

40. On information and belief, Defendant's unfair and deceptive business practices, as alleged above and herein, were willful, wanton, and fraudulent.

41. On information and belief, Defendant's officers, directors, and/or managing agents authorized the use of the false and misleading statements and material omissions regarding the serving yield of Defendant's Products, as alleged above and herein.

42. On May 6, 2021, prior to the filing of this Complaint, Plaintiffs' counsel sent Defendant a CLRA notice letter, which complies in all respects with California Civil Code §1782(a). The letter also provided notice of breach of express and implied warranties. The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. The letter stated that it was sent on behalf of Plaintiff Brown and all other similarly situated purchasers.

43. Plaintiffs and the California Subclass Members seek to enjoin the unlawful acts and practices described herein.

**COUNT II**
**Violation Of Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On Behalf Of The California Subclass)**

44. Plaintiffs and the California Subclass Members seek to enjoin the unlawful acts and practices described herein.

45. Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

46. Plaintiffs bring this claim individually and on behalf of the Members of the proposed California Subclass against Defendant.

47. Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, by engaging in unfair, fraudulent, and unlawful business practices.

48. Plaintiffs have standing to pursue this claim because they have suffered an injury-in-fact and have lost money or property from Defendant's unlawful, unfair, and fraudulent conduct. Specifically, Plaintiffs purchased Morton Salt Products for their own personal consumption. In doing so, Plaintiffs relied upon Defendant's false representations that the Salt Product was mined from the Himalayas, when in fact it was mined in Pakistan. Plaintiffs spent money in the

transaction that they otherwise would not have spent had they known the truth about Defendant's advertising claims.

***"Unfair" Prong of the UCL***

49. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. That unfairness is determined by weighing the reasons, justifications, and motives for the business act or practice against the gravity of the harm to the alleged victims.

50. Defendant's conduct constitutes an "unfair" business practice because, as alleged herein, Defendant has engaged, and continue to engage, in a false, misleading, and deceptive advertising campaign that misleads consumers into believing that the Salt Products they purchased are mined from the Himalayas, when in fact they are mined in Pakistan.

51. Defendant's conduct, as alleged above and herein, was not motivated by any legitimate business or economic need or rationale, other than to maximize their profits at the expense of consumers. No legitimate reasons, justifications, or motives outweigh the harm and adverse impact of Defendant's conduct on members of the general consuming public.

52. Defendant engaged, and continues to engage, in such conduct solely to wrongfully extract monies from consumers, including Plaintiffs, to which Defendant is not entitled.

53. Defendant could have, but has not, used alternate means of effecting its legitimate business needs, such as by properly disclosing (1) that the Products are mined in Pakistan, and (2) that the products are not, in fact, mined from the Himalayan Mountains.

54. Defendant's conduct harms consumers and hurts market competition.

55. Defendant's conduct, as alleged herein, is immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and Members of the California Subclass because it violates consumers' reasonable expectations. If Defendant had advertised its Salt Products in a non-misleading fashion, Plaintiffs and other California Subclass Members could have considered other options for purchasing salt.

*"Fraudulent" Prong of the UCL*

56. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

57. Defendant has engaged, and continues to engage, in a "fraudulent" business practice by knowingly representing to consumers that the Salt Products are "Himalayan" and the Products' descriptions also assert that the Salt Products were "harvested from ancient sea salt deposits deep within the Himalayas", when in fact they are from a salt mine in Pakistan. Defendant's conduct deceived Plaintiffs and other California Subclass Members who purchased the Salt Products in reliance on the Himalayan Claims, and it is highly likely to deceive members of the consuming public because, as alleged above, it violates consumers' reasonable expectations the Salt Products' geographic origin. Such a business practice lacks utility and functions only to maximize Defendant's profits at the expense of their customers. The gravity of the harm to Plaintiffs and other California Subclass Members, who lost money or property by paying for the Products, far outweighs any benefit from Defendant's conduct.

58. Further, Defendant's fraudulent business practice will continue to mislead consumers because it will be impossible for consumers to know whether Defendant has stopped misrepresenting the source of its Products. Accordingly, the risk of harm to Plaintiffs, Members of the California Subclass, and the consuming public is ongoing.

*"Unlawful" Prong of the UCL*

59. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

60. Defendant's business practices, as alleged herein, constitute violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* (the "CLRA").

61. Specifically, Defendant has unlawfully marketed and advertised its Salt Products in violation of Cal. Civ. Code §§ 1770(a)(4), 1770(a)(5) and 1770(a)(9), as detailed below.

62. Defendant's business practices also constitute violations of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* (the "FAL"), as detailed below.

63. Defendant's unfair, fraudulent, and unlawful business practices, as enumerated and explained above, were the direct and proximate cause of financial injury to Plaintiffs and other Members of the California Subclass. Defendant has unjustly benefitted from its wrongful conduct. Accordingly, Plaintiffs and the California Subclass seek an order of this Court that includes, but is not limited to, requiring Defendant to: (a) provide restitution to Plaintiffs and other California Subclass Members; (b) disgorge all revenues obtained because of its violations of the UCL; (c) pay attorneys' fees and costs for Plaintiffs and the California Subclass.

**COUNT III**
**Violation Of False Advertising Law,**
**Cal. Bus. & Prof. Code § 17500,** *et seq.*
**(On Behalf Of The California Subclass)**

64. Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

65. Plaintiffs bring this claim individually and on behalf of the Members of the proposed California Subclass against Defendant.

66. Defendant violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 by publicly disseminating false, misleading, and/or unsubstantiated advertisements regarding their Salt Products as alleged above and herein.

67. Plaintiffs have standing to pursue this claim because they have suffered an injury-in-fact and they have lost money or property because of Defendant's false advertising.

68. Specifically, Plaintiffs purchased a Morton Salt Product for their own personal consumption. In doing so, Plaintiffs relied upon Defendant's false, and misleading representations that the Salt Products were "Himalayan" and were "harvested from ancient sea salt deposits deep within the Himalayas." Plaintiffs spent money in the transaction that they otherwise would not have spent had they known the truth about Defendant's advertising claims.

69. Defendant disseminated false and misleading advertisements to increase the sales of its Salt Products.

70. Defendant knew or should have known that the advertisements for its Salt Products were false and/or misleading.

71. Defendant knew or should have known that consumers, including Plaintiffs and other Members of the California Subclass, would believe that the Products were "Himalayan" and were "harvested from ancient sea salt deposits deep within the Himalayas" as prominently advertised on their labels.

72. Plaintiffs and Members of the California Subclass have suffered harm as a result of Defendant's violations of the FAL because they paid monies for the Salt Products that they would not have paid but for Defendant's false and misleading advertisements.

73. Accordingly, Plaintiffs and Members of the California Subclass seek an order of this Court that includes, but is not limited to, requiring Defendant to: (a) provide restitution to Plaintiffs and other California Subclass Members; (b) disgorge all revenues obtained from their violations of the FAL; (c) pay attorneys' fees and costs for Plaintiffs and the California Subclass.

**COUNT IV**
**Breach of Express Warranty**
**(On Behalf Of The Class And The California Subclass)**

74. Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

75. Plaintiffs bring this claim individually and on behalf of the Members of the proposed Class and California Subclasses against Defendant.

76. As the designer, manufacturer, marketer, distributor, and/or seller of Morton Salt Products, Defendant issued an express warranty by representing to consumers at the point of purchase that each Salt Product is "Himalayan" and was "harvested from ancient sea salt deposits deep within the Himalayas." Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiffs and Members of the Class and California Subclasses.

77. In fact, the Salt Products are not "Himalayan" and were not "harvested from ancient sea salt deposits deep within the Himalayas." Rather, they are mined in Pakistan, hundreds of miles away. By falsely representing the Salt Products in this way, Defendant breached express warranties. As a direct and proximate result of Defendant's breach, Plaintiffs and Members of the Class and California Subclasses were injured because they: (1) paid money for Salt Products that

were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Salt Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Salt Products they purchased had less value than Defendant represented. Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiffs and Class and California Subclass Members would not have purchased the Salt Products or they would not have paid as much as they did for them.

## COUNT V
### Breach of Implied Warranty
### (On Behalf Of The Class And The California Subclass)

78. Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

79. Plaintiffs bring this claim individually and on behalf of the Members of the proposed Class and California Subclass against Defendant.

80. Defendant routinely engages in the manufacture, distribution, and/or sale of the Salt Products and is a merchant that deals in such goods or otherwise holds itself out as having knowledge or skill particular to the practices and goods involved.

81. Plaintiffs and Members of the Class and California Subclass were consumers who purchased Defendant's Salt Products for the ordinary purpose of such products.

82. By representing that the Salt Products are "Himalayan" and were "harvested from ancient sea salt deposits deep within the Himalayas," Defendant impliedly warranted to consumers that the Salt Products were merchantable, such that they were of the same average grade, quality, and value as similar goods sold under similar circumstances.

83. However, the Salt Products were not of the same average grade, quality, and value as similar goods sold under similar circumstances. Thus, they were not merchantable and, as such, would not pass without objection in the trade or industry under the contract description.

84. As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Class and California Subclass were injured because they paid money for the Salt Products that would not pass without objection in the trade or industry under the contract description.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, seek judgment against Defendant as follows:

    A.    Certifying the nationwide Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and California Subclass and Plaintiffs' attorneys as Class Counsel to represent the Class and California Subclass Members;

    B.    Declaring that Defendant's conduct violates the statutes referenced herein;

    C.    Finding in favor of Plaintiffs, the nationwide Class and the California Subclass against Defendant on all counts asserted herein;

    D.    Ordering Defendant to disgorge and make restitution of all monies Defendant acquired by means of the unlawful practices as set forth herein;

    E.    Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them all the money they are required to pay;

    F.    Awarding Plaintiffs and Class and California Subclass Members their costs and expenses incurred in the action, including reasonable attorneys' fees;

    G.    Ordering Defendant to pay pre-judgment interest on all amounts awarded;

    H.    Providing such further relief as may be just and proper.

**JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated:  September 2, 2021        **BURSOR & FISHER, P.A.**

        By:    */s/ L. Timothy Fisher*
                  L. Timothy Fisher

        L. Timothy Fisher (State Bar No.191626)
        Brittany S. Scott (State Bar No. 327132)
        1990 North California Blvd., Suite 940

Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
bscott@bursor.com

*Attorneys for Plaintiffs*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, L. Timothy Fisher declare as follows:

1. I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiffs in this action. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2. The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of California.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California this 2nd day of September, 2021.

*/s/ L. Timothy Fisher*
L. Timothy Fisher
